IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VALERIE W. WAKEFIELD, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05 CV 79 – Erie |
| | ) | |
| v. | ) | Honorable Maurice B. Cohill, Jr. |
| | ) | |
| JOY MINING MACHINERY | ) | JURY TRIAL DEMANDED |
| COMPANY, a division of Harnischfeger | ) | |
| Industries, | ) | |
| | ) | ***Electronically Filed*** |
| Defendant. | ) | |
| | ) | |
| | ) | |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

Defendant, Joy Mining Machinery ("Joy"), by and through its counsel, Pietragallo Bosick & Gordon LLP, files this Brief in Support of its Motion for Summary Judgment as to Plaintiff Valerie Wakefield's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 56(b), which has been filed contemporaneously herewith.

## FACTS AND CLAIMS MADE

### Factual Background

Valerie Wakefield ("Plaintiff"), a Joy employee, filed a Complaint with this Court purporting to state a claim of sexual harassment pursuant to Title VII of the Civil Rights

---

[1] As set forth in the Motion for Summary Judgment filed herewith, Joy hereby withdraws the Brief in Support of Defendant's Motion for Summary Judgment filed on December 13, 2006 at Document number 29 on the docket and replaces it with this Brief in Support of Defendant's Motion for Summary Judgment.

Act of 1964 ("Title VII"). Plaintiff alleges that her co-worker, Larry Meade ("Mr. Meade")[2], subjected her to unwelcome sexual harassment in the workplace and that, as a result, Joy should be liable as an employer under Title VII.

Plaintiff and Mr. Meade shared a common life experience: Mr. Meade – the death of his son and Plaintiff - the death of her stepson. After Mr. Meade shared with Plaintiff that he had lost his son to an automobile accident, Plaintiff's stepson was killed in a single vehicle automobile accident (Plaintiff Deposition at p.56:l.24-p.57:l.13, p.61:l.4-7). Plaintiff and Mr. Meade consoled and helped each other to deal with their grief by talking with one another, hugging and, in general, being there for one another (Plaintiff Deposition at p.63:l.3, 9-21; p.85:l.22-p.86:l.5-17, p.87:l.10-17, p.111:l.11-19, p.121:l.2-7, p.164:l.3-p.165:l.3).[3] In addition to talking about their shared experience and comforting one another, Plaintiff and Mr. Meade also talked about other subjects, including what they did the night before or on the weekend (Plaintiff Deposition at p.89:l.19-p.90:l.4, p.90:l.18-p.91:l.8).

Although they saw each other in the office and exchanged pleasantries and shared a consensual and comforting relationship for months following Plaintiff's stepson's death, Plaintiff alleges that Mr. Meade began engaging in unwelcome conduct (Plaintiff Deposition at p.51:l.18-23, p.55:l.13-18, p. 56:l.2-23, p.111:l.11-19, p.164:l.14-p.165:l.3). Plaintiff alleges that Mr. Meade engaged in the following conduct:

---

[2] Mr. Meade's position as a draftsman is not a supervisory position at Joy. In questioning Mr. Meade, Plaintiff's counsel did not establish that Mr. Meade has any supervisory duties at Joy (Meade Deposition at p.70:l.1-14).

[3] Plaintiff testified that other co-workers at Joy, including Cornelia Adams, Diane Kemick and Mike Calderone, also comforted her in a similar manner (Plaintiff Deposition at p.68:l.2-10, p.68:l.18-p.69:l.1, p.69:l.2-p.70:l.2, p.71:l.23-p.73:l.22, p.145:l.8-13) (See Adams Deposition at p.7:l.5).

- In June 2002, his hand touched the top of her "butt" once while they were engaging in a consensual hug (Plaintiff Deposition at p.114:l.19-21, p.115:l.6-9, 24-p.116:l.16, p.165:l.24-p.166:l.15, 20-22; p.192:l.9-14; See Narrative at p.1; Journal at p.13; Complaint at ¶¶19-21);

- In June or early July 2002, he attempted to kiss her once while they were engaging in a consensual hug (Plaintiff Deposition at p.120:l.17-22, p. 123:l.4-6, p.165:l.4-11; See Narrative at p.1; Complaint at ¶¶24-28);[4]

- In August 2002, she suggests that he asked personal questions, such as what kind of underwear she had on once or twice, told her how pretty she looked and that she could be working somewhere more glamorous than Joy and that she would look good in a bikini (Plaintiff Deposition at p.92:l.5-19, p.93:l.22-25); and

- The first Sunday of March 2003, he came to her home once allegedly knowing her husband and son were not there, professed his love for her and stated that he wanted to marry her and asked her to have sex with him (Plaintiff Deposition at p.132:l.7, p.133:l.18-p.134:l.20, p.136:l.7-12).[5]

Plaintiff did not report the March 2003 incident to Joy until almost two weeks following it having allegedly occurred (Plaintiff Deposition at p.177:l.9-23, p.204:l.12-15; Maritz Deposition at p.12:l.6-12). Immediately following the March 14, 2003 meeting in which Plaintiff and her husband disclosed the alleged March 2003 incident, Joy conducted an investigation and instructed Mr. Meade not to engage in any further contact with Plaintiff (Maritz Deposition at p.17:l.3-23; See Notes of March 14, 2003 meeting with Mr.

---

[4] Although Plaintiff at first testified in her deposition that the alleged incidents of Mr. Meade touching the top of her butt and attempting to kiss her occurred in February or March of 2003 (Plaintiff Deposition at p.111:l.6-10, p.114:l.13-21, p.120:l.2-22, p.123:l.23-p.124:l.9, p.137:l.4-15, 21-23), she later conceded in her deposition that such alleged instances occurred in June or July of 2002, which is consistent with her entries in both her Narrative and Journal and the allegations of her Complaint (Plaintiff Deposition at p.165:l.4-8, 12-p.166:l.12, 20-p.167:l.12, p.192:l.9-p.193:l.4; Narrative at p.1; Journal at p.13; Complaint at ¶¶19-21, 24-25).

[5] During this alleged incident, which was five to ten minutes or less long, Plaintiff alleges that Mr. Meade was standing inside her house in the foyer near the doorway and that she was further into the house into the dining room area approximately 13 feet apart (Plaintiff Deposition at p.138:l.1-8, p.139:l.8-18, 24-25, p.140:l.3-6). She also agrees that Mr. Meade did not touch her at any time during this alleged incident (Plaintiff Deposition at p.140:l.1-2).

Meade).  Plaintiff admits that nothing further happened with Mr. Meade following the meeting with Joy's Human Resources personnel (Plaintiff Deposition at p.175:l.16-24, p.216:l.2-8, p.239:l.11-14).  In fact, Plaintiff testified in her deposition in September 2006 that the alleged harassment stopped in March 2003 and notes from meetings with Plaintiff and Mr. Meade demonstrate that Plaintiff only saw Mr. Meade in passing once at work on April 24, 2006, over three years later (See Notes of April 25, 2006 meeting between Plaintiff, Jerry Miller, Diane Kemick and Gary Wozniak of Joy, April 24, 2006 meeting between Mr. Meade and Ms. Kemick and April 26, 2006 meeting between Plaintiff, Mr. Miller, Ms. Kemick and Randy Beightol of Joy).

Despite the fact that Plaintiff alleges that Mr. Meade engaged in unwelcome conduct at work in June 2002 and August 2002, she did not report any unwelcome conduct (other than the alleged March 2003 incident) until June 2003 (Plaintiff Deposition at p.212:l.17-p.213:l.2,  p.218:l.4-12; Martiz Deposition at p.18:l.9-11).  In fact, when Plaintiff reported the March 2003 alleged incident to Joy, she failed to mention any alleged unwelcome touching, attempted kiss or unwelcome comments of any kind (Plaintiff Deposition at p. 212:l.17-p.213:l.2; Maritz Deposition at p.18:l.9-11).

## SUMMARY OF ARGUMENT

Joy's Motion for Summary Judgment is based on several theories. First, as this is a case of alleged harassment by a co-worker, Plaintiff must prove that Joy knew or should have known of the harassment. The record does not demonstrate that Joy had, nor should it have had, any knowledge of any claimed unwelcome conduct by Mr. Meade until Plaintiff finally reported that claimed conduct to her supervisor and individuals in Joy's Human Resources Department many months after such conduct allegedly occurred. Plaintiff must also prove that Joy failed to take prompt and appropriate corrective action once she reported the alleged unwelcome conduct. The record is clear that Joy immediately and effectively investigated and addressed Plaintiff's complaint and that, in fact, its handling of such complaint resulted in no further alleged harassing behavior by Mr. Meade. Thus, the record does not support essential elements of Plaintiff's claim.

Second, even if Plaintiff had properly notified Joy of the alleged harassment or Joy otherwise should have been aware thereof, Plaintiff cannot prove her *prima facie* case, since the acts of harassment of which Plaintiff complains are not sufficiently severe or pervasive so as to constitute actionable sexual harassment under Title VII. Therefore, Joy is entitled to summary judgment as a matter of law.

## STANDARD OF REVIEW

Rule 56 requires the entry of summary judgment against a party on an issue or a claim when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986); Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). In resolving a motion for summary judgment, courts should not weigh conflicting evidence or make factual findings but, rather, should "consider all evidence in the light most favorable to the non-moving party" to determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Schnall v. Amboy Nat'l Bank, 279 F.3d 205, 209 (3d Cir. 2002).

Once the moving party has demonstrated that there are no genuine issues of material fact, the burden shifts to the non-moving party to "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions or admissions on file." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (emphasis added); see also Spangle v. Valley Forge Sewer Auth., 839 F.2d 171 (3d Cir. 1988). Summary judgment is mandated when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). Although sexual harassment claims present fact-intensive issues, motions for summary judgment "are appropriate to 'police the baseline for

hostile environment claims.' " <u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238, 1244 (11th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1068, 120 S. Ct. 1674, 146 L. Ed. 2d 483 (2000) (affirming judgment as a matter of law in favor of defendant) (quoting <u>Indest v. Freeman Decorating, Inc.</u>, 164 F.3d 258, 264 n. 8 (5th Cir. 1999)).

**ARGUMENT**

I.    **Plaintiff Cannot Establish that Joy Knew or Should Have Known of the Alleged Harassment or That Joy Failed to Take Prompt and Appropriate Remedial Action: Essential Elements of Her *Prima Facie* Case of Co-Worker Sexual Harassment Under Title VII.**

Unlike hostile environment sexual harassment by supervisors, an employer is not held strictly liable for hostile environment sexual harassment by co-workers. Instead, a plaintiff alleging co-worker harassment is required to prove a factual basis for imputing liability to the employer and, thus, employer liability is an element of the plaintiff's *prima facie* case. See Porchia v. Cohen, 1999 U.S. Dist. LEXIS 8239 (E.D. Pa. June 4, 1999) (plaintiff must prove basis for vicarious liability). This, therefore, adds an additional element of the existence of vicarious liability to Plaintiff's case and, in order to survive summary judgment, Plaintiff must be able to establish all of the following elements of a co-worker sexual harassment *prima facie* case:

- that she suffered intentional discrimination because of her sex;

- that the discrimination was severe or pervasive;

- that the discrimination detrimentally affected her;

- that the discrimination would detrimentally affect a reasonable person of the same sex in the same position; and

- the existence of *respondeat superior* liability.

See Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006) (citing, e.g., Pa. State Police v. Suders, 542 U.S. 129, 133, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004)).

Plaintiff must prove that Joy knew or should have known of the harassment but failed to take prompt and appropriate remedial action.  Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir.), cert. denied, 528 U.S. 964, 120 S. Ct. 398, 145 L. Ed. 2d 310 (1999). See also Bouton v. BMW of North America, Inc., 29 F.3d 103, 107 (3d Cir. 1994) ("prompt and effective action by an employer will relieve of [sexual harassment] liability").  The EEOC regulations regarding discrimination because of sex provide that, "[w]ith respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action."  29 C.F.R. § 1604.11(d).

### A.  The Record Evidence Demonstrates that Joy Neither Knew Nor Should It Have Known About Any Alleged Harassment Plaintiff Alleges Was Committed By Mr. Meade Until Plaintiff Reported It.

Plaintiff has failed to develop a record capable of sustaining a finding that Joy knew or should have known about the alleged acts of harassment upon Plaintiff by Mr. Meade. Therefore, it is appropriate for this Court to enter summary judgment in favor of Joy.

Courts in the Third Circuit have recognized two kinds of notice that would make an employer aware of harassment of an employee: actual and constructive.  See Kunin, 175 F.3d at 294.  With respect to actual notice, the record evidence is clear that, despite the fact that Plaintiff alleges unwelcome conduct occurred in June 2002 (the alleged instances of Mr. Meade touching the top of her butt and attempting to kiss her following a consensual hug), Joy had no knowledge of such alleged instances until Plaintiff reported them in June 2003 (Plaintiff Deposition at p.212:l.17-p.213:l.2, p.218:l.4-12; Adams Deposition at p.5:l.9-

21, p.10:l.6-10).[6] Plaintiff admits that no alleged harassing conduct took place in June 2003 and, in fact, had stopped as of March 2003 (Plaintiff Deposition at p.175:l.16-24, p.216:l.2-8, p.217:l.8-12, p.230:l.16-p.231:l.3).

With respect to constructive notice, the Third Circuit has recognized two kinds of constructive notice of sexual harassment:

> (1)  where an employee provides management-level personnel with enough information to raise a probability of sexual harassment in the mind of a reasonable employer; and
>
> (2)  where the harassment is so pervasive and open that a reasonable employer would have to be aware of it.

Sicalides v. Pathmark Stores, Inc., 2000 U.S. Dist. LEXIS 8051 (E.D. Pa. June 12, 2000) (citing Kunin, 175 F.3d at 294).[7]

With respect to the first method of proving constructive notice, it has been held that " 'a supervisor's knowledge generally will be imputed to the company for purposes of liability only if the supervisor is at a sufficiently high level in the company hierarchy.' " Anderson, 131 F. Supp. 2d at 651 (citation omitted). An employer is charged with notice when a plaintiff reports alleged harassment to a supervisor or other employee within the same company when the following are true:

> (1)  the official is at a sufficiently high level in the company to qualify as a 'proxy' for the company;
>
> (2)  the official has a duty to act on his or her knowledge and put a stop to the harassment; or

---

[6] Plaintiff's conversation on the way home with Mr. Hilliard on June 3, 2003 was the first time she had told her supervisor about any alleged incidents with Mr. Meade.

[7] In Sicalides, the plaintiff's claim failed, because she only complained to one person in management and did not specifically complain about sexual harassment. In addition, the plaintiff did not present any evidence that the harassment was so open and pervasive that a reasonable employer could not have been ignorant of it.

> (3)    the official is charged with a duty to inform the employer of the harassment.

<u>Anderson</u>, 131 F. Supp. 2d at 652 (citations omitted).

Plaintiff first notified Joy of the alleged incident in March 2003 a few weeks later on March 14, 2003 (Plaintiff Deposition at p.177:l.9-23, p.204:l.12-15; Maritz Deposition at p.12:l.6-12). Before that time, Plaintiff had not reported any alleged incidents involving Mr. Meade to her supervisor, anyone in Joy's Human Resources Department or, in fact, anyone at Joy (Plaintiff Deposition at p.90:l.5-10, p.91:l.16-p.92:l.4, p.94:l.16-21, p.101:l.20-p.102:l.5., p. 104:l.11-15, p.106:l.20-p.107:l.2, l.8-10, p.117:l.20-p.118:l.6, p.188:l.19-20, p.124:l.12-21, p.151:9-22, p.156:l.16-p.157:l.10, p.159:l.25-p.160:l.8, p.177:l.9-23, p.204:l.12-15; Maritz Deposition at p.12:l.6-12).[8] Therefore, Plaintiff cannot demonstrate that notice may be imputed to Joy through any notice she provided to her supervisor or anyone else at Joy regarding Mr. Meade's conduct toward her.

With respect to the second method of proving constructive notice, the court in <u>Kunin</u> suggested that the harassment must be pervasive and regular enough to give the employer a chance to witness it and also have been "easily discoverable by management." <u>Kunin</u>, 175 F.3d at 295. Plaintiff alleges that two isolated instances of harassment occurred one time each (touching the top of her butt and attempting to kiss her) in June 2002, that Mr. Meade made some unwelcome comments to her in August 2002 and that Mr. Meade visited her house, professed his love for her and asked to have sex with him in March 2003 (Plaintiff Deposition at p.92:l.5-19, p.93:l.22-25, p.114:l.19-21, p.115:l.6-9, 24-p.116:l.16, p.120:l.17-22, p.123:l.4-6, p.132:l.7, p.133:l.18-p.134:l.20, p.136:l.7-12, p.165:l.4-p.166:l.15, 20-22, p.192:l.9-

---

[8] Plaintiff also had not shared this alleged information with anyone outside of work either, including her husband or counselor (Plaintiff Deposition at p.218:l.13-p.219:l.10, p.220:l.21-22, p.221:l.20-p.222:l.5).

14). These allegations hardly amount to pervasive or regular harassment. In addition, these instances were far apart in time and did not span any period of time that they should have been "easily discoverable" by anyone at Joy, including management. Moreover, there is no record evidence that anyone other than Plaintiff and Mr. Meade were witnesses to the alleged harassment.

Thus, Plaintiff cannot establish that Joy had actual or constructive notice of the alleged harassment and Plaintiff, as a result, cannot prove essential elements of her claim. Therefore, this Court should enter summary judgment in favor of Joy.

### B. The Record Evidence Demonstrates that Joy took Prompt and Appropriate Remedial Action.

To the extent that the Court concludes that the record is sufficient to establish that Joy knew or should have known of the alleged harassment, Plaintiff bears the additional burden of establishing that Joy failed to implement prompt and appropriate corrective action once she reported the alleged harassment.

Plaintiff first reported the alleged incident of Mr. Meade coming to her home and professing his love for her to Joy on March 14, 2003 (Plaintiff Deposition at p.177:l.9-23, p.204:l.12-15; Maritz Deposition at p.12:l.6-12).[9] Joy immediately began an investigation of her claim (Maritz Deposition at p.12:l.6-8, p.17:l.3-23).

In the course of the investigation and as part of its efforts to remedy Plaintiff's concerns, Mr. Meade was advised, on the very first date that Plaintiff made her complaint (March 14, 2003), not to have any contact with Plaintiff (Maritz Deposition at p.17:l.3-23). As Plaintiff herself has testified, Plaintiff did not have any further contact or problems with

---

[9] Plaintiff did not tell Mr. Maritz in the March 14, 2003 meeting that Mr. Meade said he wanted to have sex with her (Maritz Deposition at p.18:l.9-11).

Mr. Meade at Joy following her complaint to Joy (Plaintiff Deposition at p.175:l.16-24, p.216:l.2-8, p.239:l.11-14). In fact, Plaintiff admits that there was no contact with Mr. Meade after the alleged March 2, 2003 incident at her home (Plaintiff's Deposition at p.175:l.16-24, p.216:l.2-8, p.239:l.11-14). The "case law is clear" that " 'when an employer's response stops harassment, there cannot be Title VII liability.' " Dunlap v. Boeing Helicopter Division, Product Support Dep't, 2005 U.S. Dist. LEXIS 2781, * 21 (E.D. Pa. Feb. 23, 2005) (quoting Kunin, 175 F.3d at 294). See also Knabe v. The Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997) ("A remedial action that effectively stops the harassment will be deemed adequate as a matter of law").

The reasonableness of the likelihood of the employer's action preventing future harassment is to be examined under the circumstances of the case as they existed at the time the allegations of harassment are made. See McKenzie v. Illinois Dep't of Transp., 92 F.3d 473, 480 (7th Cir. 1996) (citations omitted). In addition, the reasonableness of the response "depends, in part, on the gravity of the harassment alleged." McKenzie, 92 F.3d at 480 (citation omitted).

Joy's conduct following Plaintiff's complaints in March 2003 was prompt, reasonable and effective. Joy acted in good faith by instructing Mr. Meade to engage in no further contact with Plaintiff and giving him a written reprimand. An employer does not have to discipline or terminate an alleged harasser in order to avoid liability, " 'as long as the employer takes corrective action reasonably likely to prevent the offending conduct from reoccurring.' " Dunlap, 2005 U.S. Dist. LEXIS at * 21-22 (quoting Knabe, 114 F.3d at 414). The manner in which Joy handled Plaintiff's complaint constituted prompt and appropriate corrective action: following Plaintiff's complaint in March 2003, Mr. Meade did not engage in any further contact with Plaintiff of any kind. At all times, Joy acted reasonably and responsibly with regard to Plaintiff's complaints of sexual harassment and took corrective

action which not only was reasonably calculated to end the alleged harassment, but its conduct, in fact, ended the alleged harassment.

Courts have entered summary judgment and found sufficient as a matter of law an employer's actions taken to investigate complaints, and prevent any future occurrence, of harassment, such as those taken by Joy in this case. See Berry v. Delta Airlines, Inc., 260 F.3d 803 (7th Cir. 2001) (affirming summary judgment in favor of employer where employer began investigation immediately after plaintiff complained by contacting the EEO office on the date of the complaint, confronted the alleged harasser and interviewed witnesses the day after the complaint and requested a change in the alleged harasser's shift and required employees to watch a training video within a month of starting the investigation) (citing McKenzie, 92 F.3d at 481 (defendant's response to complaint reasonable where meeting held within 10 days to discuss the complaint, after which the harasser was kept from having contact with plaintiff, a memo was issued to all employees regarding harassment policy and plaintiff saw harasser only once and heard no more harassing comments from him).[10]

Because no genuine issue of material fact exists as to whether Joy responded promptly and reasonably to Plaintiff's allegations of sexual harassment by Mr. Meade, a co-worker, and, in fact, was effective in terminating all contact between Plaintiff and Mr. Meade, Plaintiff cannot establish an element of her *prima facie* case and Joy is entitled to the entry of summary judgment as a matter of law.

---

[10] It has been noted that it is appropriate for a court to find that an employer took prompt remedial action as a matter of law. Hockman v. Westward Communications, LLC, 407 F.3d 317, 329 (5th Cir. 2004) (citations omitted).

II.    **Summary Judgment Should Be Entered in Favor of Joy Since Plaintiff Cannot Establish that The Conduct of Which She Complains Constitutes Harassment or Created a Hostile Working Environment, another Essential Element of Her Claim.**

The record evidence demonstrates that there is no genuine issue as to any material fact regarding whether the conduct Plaintiff alleges occurred constitutes actionable sexual harassment, as such conduct is neither severe nor pervasive enough to rise to the level of harassment under Title VII.   Therefore, to the extent this Court finds that Plaintiff has established sufficient facts to establish employer liability, summary judgment should still be entered in favor of Joy, since Plaintiff cannot prove another essential element of her case: that the harassment was sufficiently severe or pervasive.

In harassment cases, courts examine the pervasiveness and severity of the harassment to assess whether a hostile work environment exists. See Meritor, 477 U.S. at 67 (in order to be actionable, the alleged conduct must be "sufficiently severe or pervasive" to alter the conditions of the victim's employment and create an abusive working environment").   It has been held that, in order for a plaintiff to survive summary judgment, he or she "must present evidence from which a reasonable jury could conclude that the harassment was sufficiently 'severe or pervasive' to affect a term, condition, or privilege of the plaintiff's employment."   Powell v. Yellow Book USA, Inc., 445 F.3d 1074, 1077 (8th Cir. 2006) (quoting Harris v. Forklift Sys, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

In order to determine whether alleged discrimination is sufficiently "pervasive", a court is to consider all of the circumstances of the plaintiff's employment, including the frequency and severity of the discriminatory conduct, the physically threatening, humiliating or offensive nature of such conduct and the effect such conduct has upon the

plaintiff, including the plaintiff's performance and psychological well-being.  See Richards, 2004 U.S. Dist. LEXIS at * 12 (citing Harris, 510 U.S. at 23).

Requiring that plaintiffs in sexual harassment cases prove that such harassment was severe or pervasive "ensures that Title VII does not become a mere 'general civility code.' " Gupta v. Florida Board of Regents, 212 F.3d 571, 583 (11th Cir. 2000) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84, 141 L.Ed.2d 662 (1998), cert. denied, 531 U.S. 1076, 121 S. Ct. 772, 148 L. Ed. 2d 671 (2001)).  Such requirement is "regarded 'as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace – such as . . . intersexual flirtation – for discriminatory "conditions of employment" ' " Gupta, 212 F.3d at 583 (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81, 118 S. Ct. 998, 1003, 140 L.Ed.2d 201 (1998)).

This Court should find as a matter of law that Plaintiff cannot make out a prima facie case of sexual harassment since any alleged unwelcome conduct of Mr. Meade was not sufficient to create a hostile, abusive working environment.  The conduct Plaintiff alleges occurred was not frequent or severe.  As stated above, Plaintiff alleges that two isolated instances of harassment occurred one time each (touching the top of her butt and attempting to kiss her) in June or July 2002, that Mr. Meade made some unwelcome comments to her in August 2002 and that Mr. Meade visited her house, professed his love for her and asked to have sex with him in March 2003 (Plaintiff Deposition at p.92:l.5-19, p.93:l.22-25, p.114:l.19-21, p.115:l.6-9, 24-p.116:l.16, p.120:l.17-22, p.123:l.4-6, p.132:l.7, p.133:l.18-p.134:l.20, p.136:l.7-12, p.165:l.4-p.166:l.15, 20-22, p.192:l.9-14).

Courts across the circuits have consistently dismissed cases involving similar and even more serious allegations than those in this case either on summary judgment or

motions to dismiss, holding that the facts alleged did not rise to the level of severe or pervasive conduct required for recovery under Title VII:

(1)    Hockman v. Westward Communications, Inc., 407 F.3d 317, 326, 328 (5th Cir. 2004) (affirming summary judgment in favor of employer where co-worker allegedly made a comment to plaintiff about another employee's body, slapped plaintiff on the behind with a newspaper, brushed up against plaintiff's breasts and behind, once held her cheeks and tried to kiss her, asked plaintiff to come to the office early so they could be alone and stood in the door of the bathroom while plaintiff was washing her hands).

(2)    Gupta, 212 F.3d at 578-79 (court reversed jury verdict for plaintiff and remanded as evidence presented at trial, including that the alleged harasser was very supportive of her and went "out of his way" to help plaintiff as a new employee, had lunch with plaintiff almost every day initially, called plaintiff 2-3 times a week at home at night for approximately 5 months, frequently asked plaintiff to have lunch with him, put his hand on her right inner thigh, touched her bracelet and hem of her dress, complimented plaintiff regarding how beautiful she was, and eventually offered to spend the night with her on a stormy night, did not support a finding that the alleged harassment was so frequent, severe or pervasive to constitute actionable sexual harassment).

(3)    Adusumilli v. City of Chicago, 164 F.3d 353, 361-62 (7th Cir. 1998) (affirming summary judgment for employer where plaintiff claimed she was teased and subjected to ambiguous comments, staring and attempts to make eye contact and four alleged incidents in which a co-worker briefly touched her arm, fingers or buttocks), cert. denied, 528 U.S. 988, 120 S. Ct. 450, 145 L. Ed. 2d 367 (1999).

(4)    Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 334-35 (7th Cir. 1993) (affirming summary judgment for employer where one of plaintiff's supervisors complimented plaintiff, told her how beautiful she was, asking her for dates, attempted to kiss her a few times, placed "I love you" signs in her work area and put his hand on her shoulder at least 6 times).

(5)    Chelette v. State Farm Mut. Auto. Ins. Co., 2006 U.S. Dist. LEXIS 61241, ** 4, 28-31 (W.D. La. Aug. 29, 2006) (motion for summary judgment granted where conduct not sufficient to create hostile, abusive working environment where, during the 5 years the plaintiff and her co-worker worked together, he brushed up against her with his arm an unknown number of times, stood next to her and brushed his arm against her breast an unknown number of times, rubbed or "massaged" her shoulders 4 or 5 times which she was sitting at her desk and stared at her breasts, and alleged harasser commented plaintiff was proportioned nicely and that her husband was lucky, made other comments about her body and how much he liked to watch her walk away, commented about his lack of sex life and questioned plaintiff about whether she ever thought of having an affair, and discussed how lucky another employee's former husband was, since he had several affairs with young college women) (collecting cases) (citations omitted).

(6)    <u>Aulds v. Bancroft Bag, Inc.</u>, 2006 U.S. Dist. LEXIS 27515, ** 2, 11-12 (W.D. La. May 3, 2006) (granting employer's motion for summary judgment where plaintiff's co-worker asked her to have sex with him 2-6 times, sent her 2 text messages with naked silhouettes of women on her cell phone, asked her to get "high" with him after work and followed her part of the way home once) (collecting cases) (citations omitted).

(7)    <u>Powell</u>, 445 F.3d at 1076, 1077 (harassment not so severe or pervasive as to alter terms of plaintiff's employment where plaintiff alleged that co-worker talked about sexual exploits outside of the office, described fantasies she harbored concerning co-workers, propositioned plaintiff for sex, sought to convert plaintiff to her religion and spiked her drink with methamphetamine).

(8)    <u>Prince v. Cablevision Systems Corp.</u>, 2005 U.S. Dist. LEXIS 8147, * 5-6, 17-18, 19-23 ( S.D.N.Y. May 6, 2005) (court granted motion to dismiss where plaintiff claimed the alleged harasser attempted to kiss her, told her he wanted to have sex with her and others, solicited her to go into a public bathroom to have sex with him, and engaged in sex talk with plaintiff and others).

(9)    <u>Lulis v. Barnhart</u>, 252 F. Supp.2d 172, 174, 178 (E.D. Pa. 2003) (motion for summary judgment granted for employer where plaintiff alleged supervisor subjected him to four instances of touching, three instances of suggestive staring, four instances of sitting too close to or following plaintiff, three propositions of a sexual nature, one instance where plaintiff was shown photos of supervisor and one instance where a speaker was permitted to make off-color jokes in front of plaintiff).

(10)    <u>Melina v. Brooklyn Park Budget Cars, Inc.</u>, 2002 U.S. Dist. LEXIS 25378, ** 2, 6-7 (D. Minn. Dec. 9, 2002) (granting employer's motion for summary judgment where conduct alleged did not surpass the "high threshold . . . for a hostile work environment claim; plaintiff alleged that alleged harasser made frequent calls to her at work while he was inebriated, during one such call professed his love for plaintiff, made nearly daily calls to ostensibly check on the business each evening, and acted like a "jealous lover" when she had lunch or went out with friends).

(11)    <u>O'Dell v. Trans World Entertainment</u>, 153 F. Supp.2d 378 (S.D.N.Y. 2001), <u>aff'd</u>, 40 Fed. Appx. 628; 2002 U.S. Dist. LEXIS 14446 (2d Cir. 2002) (summary judgment entered for employer where defendant made comments to plaintiff that he liked clothes she wore and thought they were sexy, sent plaintiff numerous e-mails and at least one letter professing his love for her, gave her gifts for her birthday and Valentine's Day, made daily calls several times a day to her at home and at work and told her he loved her, visited her at work at the end of the day and suggested they schedule their days off together to take a trip to New York City).

(12)    <u>Saidu-Kamara v. Parkway Corp.</u>, 155 F. Supp.2d 436, 439-40 (E.D. Pa. 2001) (motion for summary judgment granted on hostile work environment claim in case involving four incidents that occurred over an eighteen month period: plaintiff's supervisor touched her breast, told her she looked "fresh," and propositioned her to join him later that evening; several months later, supervisor made several suggestive comments regarding plaintiff's eyes and offered his financial assistance if

she would go out with him; a few moths later, supervisor removed from his pants a large bottle of wine, offered plaintiff a drink, and asked her to join him later at a local hotel where they could have a "good time"; several months later, supervisor patted plaintiff on the buttocks and breast).

(13)    Bauder v. Wackenhut Corp., 2000 U.S. Dist. LEXIS 20813, ** 2-3, 11-13 (E.D. Pa. Mar. 23, 2000) (motion for summary judgment granted for employer where an agent of employer asked a reference during plaintiff's background check if she had ever seen plaintiff naked, male members of employer's staff discussed what sort of tattoos plaintiff had and where they were located on her body, one of plaintiff's supervisors telephoned her late at night and left a message on her answering machine and grabbed her buttocks on one occasion and plaintiff's husband was told in response to a question as to why her in-house, work-related physical was taking so long that "if you were giving her a physical you would take long as well").

(14)    Lucas v. South Nassau Communities Hosp., 54 F. Supp.2d 141 (E.D.N.Y. 1998) (entering summary judgment in favor of employer and supervisor since court was not convinced of the severity or sufficiency of the plaintiff's claims of harassment, where plaintiff claimed that the alleged harasser brushed up against the plaintiff on three (3) occasions, her hand touched plaintiff on three (3) occasions, her hand touched the plaintiff's back or shoulder 5-7 times, suggested once that plaintiff wanted to go to bed with her, asked plaintiff what color his underwear were two (2) to three (3) times and said "f--- you" on two (2) occasions).

(15)    McGraw v. Wyeth-Ayerst Laboratories, Inc., 1997 U.S. Dist. LEXIS 20813, ** 3-5, 15-18 (E.D. Pa. Dec. 30, 1997) (entering summary judgment for employer on plaintiff's hostile work environment claim and finding plaintiff did not as a matter of law produce evidence sufficient to support her contention that the alleged harasser's actions were severe, pervasive or regular, where supervisor repeatedly and constantly asked plaintiff out and became increasingly angry and harsher in evaluating plaintiff and recommended plaintiff be fired as she refused his advances, took her face in his hands and expressed he wished he could take her on a business trip with him, kissed plaintiff on her birthday, forcing his tongue in her mouth, and told plaintiff he missed her while he was away on business).[11]

A comparison of these cases in which courts have entered summary judgment in favor of employers and found that alleged conduct did not rise to the level of actionable harassment with the conduct Plaintiff alleges demonstrates that the alleged harassment in this case was not physically threatening to Plaintiff, nor was it humiliating or offensive so as to render it "harassment" under Title VII.

---

[11] The court in McGraw noted that "courts have required a plaintiff to show that she has been 'subjected to continued explicit propositions or sexual epithets or persistent offensive touching.'" 1997 U.S. Dist. LEXIS at * 15 (citation omitted).

Because no genuine issue of material fact exists as to whether the alleged unwelcome conduct rises to the level of actionable sexual harassment under Title VII, summary judgment should be entered in favor of Joy.

Respectfully submitted,

*/s/ Pamela G. Cochenour, Esquire*
PAMELA G. COCHENOUR, ESQUIRE
Pa. I.D. #47761
ERIC P. REIF, ESQUIRE
Pa. I.D. #00194
PIETRAGALLO BOSICK & GORDON LLP
Firm #834
The Thirty-Eighth Floor
One Oxford Centre
Pittsburgh, PA  15219
(412) 263-2000

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** will be forwarded via the ECF system to counsel of record listed below this **27th** day of **March, 2007**:

Alexander H. Lindsay, Jr., Esquire
The Lindsay Law Firm, P.C.
128 South Main Street
Butler, PA  16001

*/s/ Pamela G. Cochenour, Esquire*
PAMELA G. COCHENOUR, ESQUIRE
Pa. I.D. #47761

PIETRAGALLO BOSICK & GORDON LLP
Firm #834
The Thirty-Eighth Floor
One Oxford Centre
Pittsburgh, PA  15219
(412) 263-2000